UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RANTI ARYANI,

    Plaintiff,

v.                                            CASE NO: 8:06-cv-2032-T-23TGW

VALLEY FORGE DENTAL OF FLORIDA,

    Defendant.
_____/

**<u>ORDER</u>**

The plaintiff, Ranti Aryani, sues the defendant, Valley Forge Dental of Florida ("Valley Forge") for religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA") and discrimination based on ethnic characteristics in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("section 1981").[1]  Valley Forge moves (Doc. 25) for summary judgment on each claim, and the plaintiff responds (Doc. 27) in opposition.

<u>Undisputed Facts</u>

The plaintiff, a licensed dentist, is a naturalized United States citizen of Indonesian descent and a Muslim.  (Pl. Dep. 12, 59-60)[2]  As part of her religious faith,

---

[1] A May 7, 2008, order (Doc. 30) approves the parties' stipulation dismissing the national origin discrimination claim.

[2] "Pl. Dep." means the plaintiff's November 26, 2007, deposition.  (Doc. 25, Ex. E; Doc. 27, Ex. 33)

the plaintiff wears a scarf that covers the top and back of her head but not her face. (Pl. Dep. 118)

Valley Forge, a Florida corporation, maintains a dental office in Bradenton, Clearwater, and several other Florida cities. (Kane Dep. 12)[3] In April, 2003, Valley Forge hired Dr. Robert Crim ("Dr. Crim"), a dentist with more than twenty years of experience, to practice in Clearwater. (Crim Dep. 16-17)[4] Upon Valley Forge's request, in April, 2005, Dr. Crim began to work in Bradenton two days a week and aimed to improve the office's professionalism, efficiency, and organization. (Crim Dep. 13-14, 17-18) As the lead dentist in Bradenton, Dr. Crim treated patients, managed associate dentists and staff, and interviewed job applicants. (Crim Dep. 12, 14; Kane Dep. 12-13, 15) Dr. Crim planned to leave Bradenton after solving the office's problems and finding a suitable replacement. (Kane Dep. 31; Crim Dep. 13, 18, 29) Dr. Crim thought he had found a replacement when Valley Forge hired Dr. Michelle Scala-Frenchman ("Dr. Scala"), a dentist with six years of experience. (Crim Dep. 87-88, 131-32) After Dr. Scala began work during the third or fourth week of August, 2005, a total of five dentists practiced in Bradenton, including Dr. Scala, Dr. Crim, and three part-time associate dentists. (Crim Dep. 33, 36-37, 87-88)

Encountering difficulty recruiting dentists for Bradenton, Valley Forge employed a senior recruiter, Richard Gordon, who placed advertisements at Careerbuilder.com.

---

[3] "Kane Dep." means Dr. Robert Kane's January 4, 2008, deposition. (Doc. 25, Ex. A; Doc. 27, Ex. 35)

[4] "Crim Dep." means Dr. Robert Crim's November 27, 2007, deposition. (Doc. 25, Ex. C; Doc. 27, Ex. 34)

(Gordon Dep. 27-28)[5]  In early September, 2005, the plaintiff visited Careerbuilder.com and saw for the Bradenton office a Valley Forge advertisement for a "full-time/part-time" "general dentist" with a graduate dental degree, a Florida license, and a year of general practice dentistry.  (Doc. 27, Ex. 19; Pl. Dep. 125)  On September 9, 2005, the plaintiff telephoned Gordon, the designated contact, who asked the plaintiff to e-mail her resume.  (Doc. 27, Ex. 19; Gordon Dep. 8-9, 15-18, 21; Pl. Dep. 125-26)  After reviewing the resume and determining that the plaintiff "fit the qualifications of the type of doctors that we typically look to hire," Gordon telephoned the plaintiff and arranged for her to interview with Dr. Crim later that day.  (Pl Dep. 125-27; Gordon Dep. 44-45)  Before the interview, neither Gordon nor Dr. Crim knew that the plaintiff wore a head covering.  (Pl. Dep. 131; Gordon Dep. 46)

In reviewing the plaintiff's resume and interviewing her, Dr. Crim learned that the plaintiff had received a Doctorate of Dental Surgery from Dr. Moestopo University Dental School in Jakarta, Indonesia, in 1996; a Doctorate of Dental Surgery from New York University ("NYU") in 2003; a Pennsylvania dental license in 2003; and a Florida dental license in 2003.  (Doc. 25, Pl. Dep. Ex. 2)  After graduation from NYU, the plaintiff worked first as a dentist for the United States Air Force from July, 2003, until her honorable discharge in September, 2004.  (Doc. 25, Pl. Dep. Ex. 2)  During the next ten months, the plaintiff worked as a dentist at three dental offices.  (Pl. Dep. 31, 54-55, 65, Ex. 1 and 2)

---

[5] "Gordon Dep." means Richard Gordon's February 14, 2008, deposition.  (Doc. 25, Ex. B; Doc. 27, Ex. 34)

During the interview, the plaintiff wore a head covering.  (Pl. Dep. 154-56; Crim Dep. 81-83)  Dr. Crim mentioned the plaintiff's New York University degree, which he considered impressive.  (Pl. Dep. 154, 157; Crim Dep. 84-85, 95)  Dr. Crim and the plaintiff discussed the plaintiff's experience in general dentistry.  (Pl. Dep. 122-23)  Dr. Crim explained that, overwhelmed with work, he was considering how to staff the office.  (Pl. Dep. 85; Crim Dep. 85)  Dr. Crim stated that he sought a dentist whose leadership in Bradenton would permit his return to Clearwater.  (Pl. Dep. 153)  Dr. Crim stated that he doubted the need for a full-time dentist in Bradenton but his mention of a part-time dentist triggered the plaintiff's interest.  (Pl. Dep. 155; Crim Dep. 93)

Dr. Crim testified that during the interview he concluded that the plaintiff exhibited some weaknesses unrelated to her academic credentials.  (Crim Dep. 95-96)  Dr. Crim determined that (1) the plaintiff lacked the experience and drive needed for a lead dentist, (2) the plaintiff lacked the necessary "conviction" or "self-assurance" for a difficult treatment decision, and (3) the plaintiff had not had the opportunity to build relationships with patients or co-workers in her earlier employment.  (Crim Dep. 89-90)  Dr. Crim told Dr. Robert Kane, Valley Forge's regional vice-president, that the plaintiff was incapable of serving as a lead dentist and that Dr. Crim would "rather stay there by himself" than hire the plaintiff as an associate dentist.  (Crim Dep. 126; Kane Dep. 50-52)  Valley Forge rejected the plaintiff's application, and on September 13, 2005, Gordon informed the plaintiff.  (Pl. Dep. 128; Kane Dep. 50-51)  Gordon stated that although he might telephone the plaintiff the following week, he was unsure whether an open position remained.  (Gordon Dep. 75-76; Pl. Dep. 145, Ex. 6)

Without altering the title or qualifications, Valley Forge continued to advertise the Bradenton vacancy for a general dentist.  (Ex. 21; Gordon Dep. 28-29)  Valley Forge hired no dentist in Bradenton until six months after rejecting the plaintiff.  On March 13, 2006, Valley Forge hired an associate dentist, Dr. Heather Andrejko ("Dr. Andrejko"), who had graduated from dental school in 2000, had acquired less than four years of dentistry experience, and had worked for six employers.  (Doc. 25, Kane Dep. Ex. 9; Crim Dep. 97)  In November, 2006, Valley Forge hired another associate dentist, Dr. Natasa Radosavljevic ("Dr. Radosavljevic"), who had earned a dental degree from a Yugoslavian dental school, had completed a supplemental education program at the University of Florida, and had acquired about three years of experience as a dentist in Yugoslavia but had not worked as a dentist for ten years.  (Crim Dep., Ex. 12)  The plaintiff never re-applied for employment, and Valley Forge never hired a replacement for Dr. Crim, who continues to work part-time in Bradenton.  (Kane Dep. 31-32)

<u>Disputed Facts</u>

The parties disagree about the dental job available with Valley Forge in Bradenton in September, 2005.  Relying on the following facts, the plaintiff argues that Valley Forge sought an associate dentist.  In September, 2005, Valley Forge advertised for a "general dentist" with a minimum of one year of experience.  (Doc. 27, Ex. 19)  After reviewing her resume, evidencing less than two years of experience, Gordon enthusiastically arranged the plaintiff's interview for the same day.  (Pl. Dep. 121-24, 126-27)  The plaintiff testified that, after Valley Forge's rejection, Gordon explained that the company hired another candidate (Dr. Scala) for the position; however, Dr. Scala

had already been worked in Bradenton for at least three weeks. (Pl. Dep. 128) Dr. Kane testified that he was unaware of an opening in September, 2005, but that if the company had found a qualified candidate, "[w]e would have put them in part time or worked out something with them." (Kane Dep. 49)

Valley Forge argues that Bradenton only had one possible opening, for a lead dentist. Gordon testified that he continually recruited candidates and that an applicant who met the minimum qualifications received an interview irrespective of an opening.[6] (Gordon Dep. 27, 32) During the interview, Dr. Crim told the plaintiff that he sought a dentist to replace him. (Pl. Dep. 153) Dr. Crim testified that he determined, soon after hiring Dr. Scala, that her lack of management skills would require his continued supervision of the Bradenton office. (Dr. Crim Dep. 86)

The plaintiff disputes that Dr. Scala had filled the last remaining associate dentist vacancy. Dr. Crim testified that although he decided early in Dr. Scala's employment that he was "going to have to coach her," he did not realize until Christmas, 2005, that Dr. Scala was "not going to solve [his] problem." (Crim Dep. 131-32) Although Valley Forge evaluates a dentist's performance after the first ninety days of employment and creates a written record of any deficiency, Dr. Scala's personnel file contained no notation of any deficiency. (Kane Dep. 15-16)

---

[6] The parties disagree about the placement of the Careerbuilder.com advertisement. Gordon testified that he needed to place an advertisement in the Florida Dental Journal thirty to sixty days before publication. (Gordon Dep. 28, 72) Relying solely upon this testimony, Valley Forge argues that Gordon needed to place a Careerbuilder.com advertisement thirty to sixty days in advance. The record contains no evidence to support Valley Forge's assertion.

- 6 -

The parties dispute whether during the interview Dr. Crim learned of the plaintiff's religion. The plaintiff argues that her head covering informed Dr. Crim of her religion. (Doc. 27 at 15) Dr. Crim provided the following testimony during his deposition.

> Q. When you saw Dr. Aryani wearing her head covering did you assume that it was a statement about her faith?
> A. I am not certain because I don't have a lot of knowledge about the significance of the head covering, whether it's religious or cultural. So I really don't know.
> Q. So did you assume it was religious or cultural?
> A. I assumed that it was something that identified her – you know, her commitment to something. What it was it is, I have no idea. We didn't discuss it.
> Q. And would it be accurate to say that you assumed that it was something other than a fashion statement?
> A. Yes.

(Crim Dep. 82) Valley Forge argues that Dr. Crim did not know the plaintiff's religion.

## Discussion

Rule 56(c), Federal Rules of Civil Procedure, authorizes summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A material fact relates to a dispute which "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The movant must show the absence of a dispute of a material fact. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

### A. Prima Facie Case

Because the plaintiff cannot prove discrimination by direct evidence, the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct.

1817 (1973), applies.  To create an inference of discriminatory intent, the plaintiff must prove (1) she is a member of the protected class, (2) she was qualified for, and applied for, employment, (3) the employer declined to hire her, and (4) the employer left the job open despite the plaintiff's proven qualification.[7]  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004); Sledge v. Goodyear Dunlop Tires N. Am., Ltd., 275 F.3d 1014, 1015 n.1 (11th Cir. 2001) (per curiam).  The plaintiff satisfies the first prong because as a Muslim and a person of Indonesian heritage, the plaintiff is a member of a protected class.  The plaintiff satisfies the third prong because Valley Forge declined to hire her as a dentist.

For the second prong, the plaintiff must prove only that she met Valley Forge's objective job requirements.  See Walker v. Mortham, 158 F.3d 1177, 1192-93 (11th Cir. 1998); Crawford v. Western Elec. Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980).  The plaintiff need not prove that she satisfied Valley Forge's subjective requirements relating to skill, ability, merit, or capacity.  Crawford, 614 F.2d at 1315; , Rowe, 457 F.2d at 358-59. Not surprisingly, the parties dispute which qualifications control.  Valley Forge argues that a prospective lead dentist needed (1) substantial experience, (2) conviction and self-assurance, and (3) the ability to form relationships with patients and co-workers.  (Doc. 25 at 15)  The plaintiff argues that a prospective associate dentist needed (1) a graduate dental degree, (2) a Florida license, and (3) a minimum of one year of general practice dentistry.  (Doc. 27 at 12-13)  The record contains a genuine issue of material fact as to whether Valley Forge sought an associate dentist in

---

[7] A plaintiff may also satisfy the fourth prong by proving that an equally or less qualified person outside the plaintiff's class received the position.

September, 2005. Several facts support an associate dentist opening, including (1) Valley Forge's decision to advertise for a general dentist with a minimum of one year of experience, rather than a lead dentist with several years of experience, (2) the testimony of Dr. Crim, Dr. Kane, and Gordon that Valley Forge hired Dr. Scala as a lead dentist about three weeks before the plaintiff's interview, (3) Valley Forge's decision to interview the plaintiff despite her lack of substantial experience, and (4) Dr. Crim's testimony that he did not determine until Christmas, 2005, that Dr. Scala would not succeed as a lead dentist. A fact finder could determine that in September, 2005, an associate dentist vacancy remained. The objective requirements for an associate dentist include a graduate dental degree, Florida license, and a minimum of one year of experience, all of which the plaintiff met.

With regard to the fourth prong, the plaintiff must prove that Valley Forge hired no one despite the plaintiff's proven qualification. Valley Forge did not hire another associate dentist until March, 2006. The plaintiff therefore raises a genuine issue of material fact that Valley Forge left the position vacant.

To establish a prima facie case of intentional religious discrimination, a plaintiff must additionally prove that the hiring decision-maker knew of the plaintiff's religion. See Lubetsky v. Applied Card Sys., Inc., 296 F.3d 1301, 1306 (11th Cir. 2002). Valley Forge argues that the plaintiff failed to prove Dr. Crim's knowledge of the plaintiff's religion. In Lubetsky, an employer rescinded a job offer awarded to an Orthodox Jew. Lubetsky affirms the determination that the plaintiff failed to establish a prima facie case because the decision-maker knew nothing of the plaintiff's religion. The decision-maker

never saw the plaintiff wear religious garb or a religious symbol. However, in the present case, Dr. Crim observed the plaintiff wearing a head covering, clothing intimately and readily associated with Islam. Dr. Crim knew the head covering signified the plaintiff's commitment to a cultural or religious belief. (Crim Dep. 82) A genuine issue of material fact exists as to whether Dr. Crim knew the plaintiff's religion.

### B. Legitimate, Non-Discriminatory Reason

Because the plaintiff has established a prima facie case of religious discrimination under Title VII and the FCRA and discrimination based on ethnic characteristics under section 1981, the burden shifts to Valley Forge to provide a legitimate, non-discriminatory reason for the decision to reject the plaintiff's application. See Chapman v. AI Transp., 229 F.3d 1012, 1024-25 (11th Cir. 2000) (en banc). If the employer meets this burden, the inference of discrimination drops out of the case entirely, and the plaintiff must show that the proffered reasons were pretextual. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763 (11th Cir. 2005) (per curiam) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 2742 (1993)). In attempting to demonstrate pretext, a plaintiff may not "recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." Chapman, 229 F.3d at 1030. If the proffered reason "might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman, 229 F.3d at 1030.

Valley Forge argues that it declined to hire the plaintiff as the lead dentist because she lacked experience, had never managed an office or supervised other

dentists, lacked conviction and self-assurance, and had not had the ability to form relationships with patients and co-workers. (Doc. 25 at 18) However, the plaintiff has established a genuine issue of material fact as to whether Valley Forge retained an associate dentist vacancy. Valley Forge fails to establish that Dr. Crim's qualifications for a prospective lead dentist applied to a prospective associate dentist. Dr. Andrejko and Dr. Radosavljevic had never managed an office or supervised other dentists. Dr. Andrejko had worked for six employers during her four years of dentistry. (Doc. 25, Kane Dep. Ex. 9; Crim Dep. 97) The plaintiff has raised a genuine issue of material fact as to the truthfulness of Valley Forge's proffered reasons for declining her application. Because the plaintiff has rebutted Valley Forge's reasons, a fact finder could conclude that Valley Forge intentionally discriminated against the plaintiff based on her religion in violation of Title VII and the FCRA and intentionally discriminated against her based on her ethnic characteristics in violation of section 1981. Valley Forge's motion (Doc. 25) for summary judgment is **DENIED**.

ORDERED in Tampa, Florida, on June 23, 2008.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE